UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| MARCY E. YOUNG, | : | CASE NO. 1:23-cv-01435 |
| Plaintiff, | : | OPINION & ORDER |
|  | : | [Resolving Docs. 1, 8, 9] |
| v. | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
| Defendant. | : |  |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Marcy Young seeks review of the Commissioner of Social Security's final decision denying Disability Insurance Benefits.[1] The Court referred Young's Social Security challenge to Magistrate Judge Armstrong under Local Rule 72.2(b).

Before Magistrate Judge Armstrong, Plaintiff Young argued that the Administrative Law Judge (ALJ) who denied her disability application made three mistakes.[2] First, Young claimed that at Step Two the ALJ wrongly concluded Young's mental impairments were non-severe. Second, Young claimed that the ALJ improperly evaluated medical opinions in the record. And third, Young claimed that the ALJ failed to apply Social Security Ruling 16-3p.

Magistrate Judge Armstrong filed a Report and Recommendation (R&R) recommending that the Court reject all three of Young's arguments and affirm the

---
[1] Doc. 1.
[2] Doc. 5 at 1.

Case No. 1:23-cv-01435
GWIN, J.

Commissioner's decision.[3] Plaintiff Young objected to only the R&R section rejecting Young's mental impairment severity argument.[4] The Commissioner responded.[5]

For the reasons below, the Court **OVERRULES** Young's objections, **ADOPTS** the R&R, and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

In July 2019, Plaintiff Young filed an application for Disability Insurance Benefits.[6] At the time, Young was thirty-five years old.[7] As relevant here, with the application Young claimed that her anxiety, depression, and adjustment disorder limited her ability to work.[8]

On October 17, 2022, an ALJ denied Young's application.[9] In the denial, the ALJ reasoned in part that, Young had medically determinable mental impairments but found those impairments were not severe.[10] In making this determination, the ALJ considered how Young's mental impairments limited her abilities in four functional areas known as the "paragraph B" criteria.[11] Going through each of those four areas, the ALJ found that Young had no more than mild mental limitations.[12]

On June 18, 2024, Magistrate Judge Armstrong recommended rejecting Young's arguments and affirming the Commissioner's decision.[13] Young partially objected, contesting only the R&R's conclusion that Young's mental impairments were non-severe.[14]

---

[3] Doc. 8.
[4] Doc. 9.
[5] Doc. 10.
[6] Doc. 4 at 196–97. All pinpoint citations to the administrative transcript are to the Bates-stamped page numbers at the bottom right corner.
[7] *Id.*
[8] *Id.* at 49.
[9] *Id.* at 14–37.
[10] *Id.* at 20.
[11] *Id* at 21–22.
[12] *Id.*
[13] Doc. 8.
[14] Doc. 9.

Case No. 1:23-cv-01435
GWIN, J.

## II. LEGAL STANDARD

The Court reviews de novo those portions of a Magistrate Judge's recommendations that a party objects to.[15] But when a party fails to object to part of the Magistrate Judge's recommendation, that party forfeits the right to challenge those unobjected-to parts.[16]

In using the de novo standard, the Court reviews the ALJ's decision to determine if it is "supported by substantial evidence and [] made pursuant to proper legal standards."[17] Young's objections raise only substantial evidence issues. So, the Court looks for whether the record contains "more than a scintilla of evidence but less than a preponderance" such that "a reasonable mind might accept [the evidence] as adequate to support [the ALJ's] conclusion."[18]

Because the substantial evidence standard is highly deferential, the Court must affirm whenever there is substantial evidence supporting the ALJ's conclusion, "even if there is [also] substantial evidence in the record that would have supported an opposite conclusion."[19]

Moreover, even if Young is correct that the ALJ should have found Young's mental impairments to be severe, such a mistake is harmless (and therefore not reversible) if the ALJ considered Young's mental impairments at later steps in the Social Security decision-making process.[20]

## III. DISCUSSION

ALJs apply a five-step process to determine a claimant's eligibility for Social Security

---

[15] 28 U.S.C. § 636(b)(1).
[16] *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).
[17] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation omitted).
[18] *Id.* (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).
[19] *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 745–46 (6th Cir. 2018) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).
[20] *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020).

Case No. 1:23-cv-01435
GWIN, J.

benefits.[21] ALJs address medical impairment severity at Step Two.[22] This step is a "*de minimis* hurdle" for claimants—a medical impairment is non-severe "only if it is a slight abnormality that minimally affects work ability."[23] Although the bar for severity is low, it still has force.

The Social Security regulations expressly spell out how ALJs must evaluate mental impairment severity.[24] First, an ALJ must evaluate the record to determine if a claimant has medically determinable mental impairments.[25] Second, the ALJ must "rate the degree of functional limitation resulting from" those impairments within four broad functional areas, known as the "paragraph B" criteria.[26] Those four areas are: (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; and (d) adapting or managing oneself.[27] If the claimant's limitations are "mild" or less for each area, the claimant's mental impairments are usually non-severe.[28]

In this case, the ALJ appropriately followed the Social Security regulations. After concluding that Young had medically determinable mental impairments,[29] the ALJ went on to find that Young had no more than mild limitations in each of the four paragraph B areas.[30]

Taking the paragraph B areas in order, the Court finds that the ALJ's paragraph B findings are supported by substantial evidence.

First, the record shows that Young has few limitations in understanding, remembering,

---

[21] 20 C.F.R. § 404.1520(a)(4).
[22] 20 C.F.R. § 404.1520(a)(4)(ii).
[23] *Rogers*, 486 F.3d at 243 n.2 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).
[24] 20 C.F.R. § 404.1520a.
[25] 20 C.F.R. § 404.1520a(b)(1).
[26] 20 C.F.R. § 404.1520a(b)(2).
[27] 20 C.F.R. § 404.1520a(c)(3).
[28] 20 C.F.R. § 404.1520a(d)(1).
[29] Doc. 4 at 20.
[30] *Id.* at 21–22.

- 4 -

Case No. 1:23-cv-01435
GWIN, J.

or applying information. Notably, Young indicated that reading and writing were hobbies, and that she was writing a book.[31] Young also stated that she was able to manage personal finances and that she served on two local boards.[32] And Young reported regularly working on puzzles to keep herself engaged.[33] Each of these activities require mental acuity as well as the ability to process and reason through information. As such, a reasonable mind could agree with the ALJ that Young's limitations in this area are mild.

Second, little in the record suggests that Young has mental limitations in her interactions with others. To the contrary, Young did not claim problems with social interactions, and her activities—regularly participating in her children's school matters, regularly participating in social groups, going on a cruise, and going out for a "girl's night"—suggest the opposite.[34]

Third, while a treatment note describing Young as "slightly distractable" could be a sign of some concentration issues,[35] the rest of the record supports the ALJ's conclusion that any concentration or persistence issues were mild at worst. Again, Young's reading, writing, and puzzle-solving are activities that cut against concentration issues because those activities require an ability to focus for extended periods of time.[36] And most treatment notes describe Young as demonstrating appropriate concentration.[37]

Finally, the record shows that Young has few mental limitations in adapting or managing herself. Although Young reported some self-care limitations, those limitations

---

[31] Doc. 4 at 276, 718
[32] *Id.* at 52, 275.
[33] *Id.* at 675.
[34] *Id.* at 276–77, 583, 697.
[35] *Id.* at 384.
[36] *See id.* at 276, 675, 718.
[37] *Id.* at 679, 686, 693, 701.

Case No. 1:23-cv-01435
GWIN, J.

primarily stem from Young's physical impairments, not Young's mental impairments.[38] The record also shows that Young is able to take responsibility for caring for her children, something that requires adaptation skills.[39]

Plaintiff Young does not directly challenge the ALJ's paragraph B analysis. Instead, Young tries pointing to evidence that "otherwise indicates that there is more than a minimal limitation in [her] ability to do basic work activities."[40] Specifically, Young cites evidence attributing part of her fatigue to her mental impairments, and evidence that Young was having panic attacks.[41]

A reasonable person viewing this evidence could conclude that Young's mental impairments significantly limit her ability to work. However, a reasonable person could also look at the evidence cited by the ALJ and conclude Young's activities show Young is able to manage her fatigue and anxiety well enough that she has no more than mild functional limitations.

But the Court has only a limited role and cannot weigh those two competing conclusions to decide which one is more compelling. Under the substantial evidence standard, as long as the ALJ's conclusion is reasonably supported by the evidence, the Court must affirm even if the evidence might support another reasonable conclusion.[42] That is the case here.

Regardless, even if the ALJ's severity determination was wrong, it was harmless. The ALJ stated that she "consider[ed] all of the claimant's impairments, including impairments

---

[38] Doc. 4 at 272–79.
[39] *Id.* at 675–76.
[40] 20 C.F.R. § 404.1520a(d)(1).
[41] Doc. 4 at 313–14, 676–77, 697.
[42] *Cardew*, 896 F.3d at 745–46.

Case No. 1:23-cv-01435
GWIN, J.

that are not severe."[43]  The ALJ also explicitly noted that she incorporated Young's mental impairments into her subsequent analysis, writing, "The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."[44]

Young's only response to the harmlessness issue is that the ALJ failed to expressly cite Social Security Ruling (SSR) 96-8p.[45]  This ruling requires ALJs to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[46]  The Court doubts that citing the exact ruling number is necessary for harmlessness when, like here, the ALJ has cited the ruling's relevant substance.  In any case, the ALJ here *did* cite SSR 96-8p.[47]  Any error was therefore harmless.

In sum, the Court finds that the ALJ's Step Two severity determination was supported by substantial evidence or, in the alternative, was harmless error.

## IV.  CONCLUSION

The Court **OVERRULES** Plaintiff Young's objections, **ADOPTS** the R&R,[48] and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Dated: August 8, 2024                    *s/   James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE

---

[43] Doc. 4 at 19.
[44] *Id.* at 22.
[45] Doc. 9 at 4–5.
[46] SSR 96-8p, 1996 WL 374184, at *5.
[47] Doc. 4 at 19.
[48] The Court adopts the unobjected-to portions of the R&R without review because Young has forfeited her challenge to those portions.  *See Berkshire*, 928 F.3d at 530.